# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

----------------------------------------------------------------------- X

ROBIN KEMPNER,                                    :
                                                  :        Civil Action No.
                          Plaintiff,              :
                                                  :
          -against-                               :        JURY TRIAL DEMANDED
                                                  :
SOHO MEDICAL DOCTORS, PLLC d/b/a                  :
SOHOMD, SOHO MANAGING COMPANY d/b/a               :        NOVEMBER 10, 2025
SOHOMD, S2 HR SOLUTIONS GROUP 1, LLC              :
d/b/a ENGAGE PEO, S2 HR SOLUTIONS 1C,             :
LLC, S2 HR SOLUTIONS, 1D, LLC, JACQUES            :
JOSPITRE, M.D., AND EDWARD RATUSH,                :
M.D.,                                             :
                                                  :
                          Defendants.             :
----------------------------------------------------------------------- X

## INTRODUCTION

Plaintiff Robin Kempner, by her attorneys Madsen, Prestley & Parenteau, LLC,

complaining of Defendants Soho Medical Doctors, PLLC, (collectively referred to as

"SoHoMD"), SOHO Managing Company (collectively referred to as "SoHoMD"), S2 HR

Solutions Group 1, LLC d/b/a Engage PEO, S2 HR Solutions 1C, LLC, S2 HR Solutions

1D, LLC, Dr. Jacques Jospitre, Jr. ("Jospitre"), and Dr. Edward Ratush ("Ratush")

allege:

## NATURE OF THE ACTION

1. Plaintiff Robin Kempner brings this action pursuant to the Connecticut Minimum

   Wage Act, Conn. Gen. Stat. § 31-58 et seq., and § 31-71a *et seq*. (wage

   payment statutes), seeking unpaid wages, liquidated damages, and other relief

   arising from Defendants' failure to timely and fully compensate her during the

   course of her employment.

2. Plaintiff also asserts claims for breach of contract and unjust enrichment based on Defendants' failure to pay wages and failure to honor a promised retirement package.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) and/or 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claim occurred in Connecticut, where Plaintiff resided and worked.

## PARTIES

5. Plaintiff Robin Kempner is an individual residing in the State of Connecticut. She was employed by Defendant SoHoMD from 2018 through July 1, 2025.

6. Defendant SOHO MEDICAL DOCTORS, PLLC d/b/a SoHoMD is a New York professional limited liability company formed on August 11, 2011, with offices located at 104 West 40th Street, Suite 500, New York, NY 10018. SoHoMD is in the business of teletherapy and telepsychiatry, employing licensed mental health counselors (LMHCs), licensed clinical social workers (LCSWs), nurse practitioners (NPs), psychiatrists, and other licensed mental health professionals as either independent contractors or employees to provide mental health services to clients. SoHoMD also employs ancillary administrative, billing, and support staff who perform non-clinical functions essential to the operation of the

business.  Defendant SoHoMD conducts business and provides services within the State of Connecticut.

7.  Defendant SOHO MANAGING COMPANY d/b/a SoHoMD is a New York corporation formed on October 17, 2018, with offices located at 104 West 40th Street, Suite 500, New York, NY 10018.  Defendant SoHo Managing Company d/b/a SoHoMD conducts business and provides services within the State of Connecticut.

8.  Defendant SoHo Medical Doctors, PLLC and Defendant Soho Managing Company are referred to herein collectively as "SoHoMD."

9.  Defendant S2 HR SOLUTIONS GROUP 1, LLC d/b/a ENGAGE PEO is a payroll processing company that supports payroll and other human resources functions in multiple states across the country.  Defendant Engage PEO is a Florida limited liability company with a principal office address of 4211 W. Boy Scout Blvd., Suite 500, Tampa, Florida 33607.  Defendant Engage PEO operates under different entities depending on the state.

10. In the state of Connecticut, Defendant Engage PEO operates under two specific entities: Defendant SR HR Solutions, 1C, LLC and Defendant S2 HR Solutions 1D, LLC.

11. Defendant S2 HR SOLUTIONS, 1C, LLC is a foreign limited liability corporation conducting business and providing services within the State of Connecticut. Defendant S2 HR Solutions 1C, LLC has a principal office address of 3001 Executive Drive, Suite 340, St. Petersburg, Florida, 33762.

12. Defendant S2 HR SOLUTIONS, 1D, LLC is a foreign limited liability corporation conducting business and providing services within the State of Connecticut. Defendant S2 HR Solutions 1D, LLC has a principal office address of 4211 W. Boy Scout Blvd., Suite 500, Tampa, Florida 33607.

13. Hereinafter, Defendants S2 HR Solutions 1C, LLC, S2 HR Solutions 1D, LLC, and S2 HR Solutions Group 1, LLC d/b/a Engage PEO will be collectively referred to as "Engage PEO/S2 HR Entities."

14. By issuing Plaintiff's W-2 forms, processing Plaintiff's payroll, and administering employment taxes and benefits, Defendants Engage PEO/S2 HR Entities acted as Plaintiff's employer of record, thereby assuming obligations imposed on employers under the Connecticut Minimum Wage Act.

15. At all relevant times, Defendants Engage PEO/S2 HR Entities exercised substantial control over the terms and conditions of Plaintiff's employment, including but not limited to payroll, tax withholding, benefits eligibility, and employment classification.

16. As a co-employer with the SoHoMD Defendants, Defendants Engage PEO/S2 HR Entities were jointly responsible for ensuring compliance with applicable wages, hours, and employment laws and statutes.  Instead, Defendants Engage PEO/S2 HR Entities facilitated and perpetuated unlawful practices, including the denial of earned benefits, and the failure to remit proper wages.

17. By knowingly processing payroll and issuing W-2s under multiple entities, Defendants Engage PEO/S2 HR Entities actively participated, facilitated, and

concealed SoHoMD's multi-state scheme of misclassification and wage violations.

18. Upon information and belief, Defendants Engage PEO/S2 HR Entities failed to conduct adequate review, monitoring, and oversight of SoHoMD's employment practices.  Had Defendants Engage PEO/S2 HR Entities exercised even minimal due diligence, they would have discovered SoHoMD's failure to remit proper wages.  By continuing to co-employ SoHoMD's workforce despite obvious red flags, Defendants Engage PEO/S2 HR Entities not only breached their statutory obligations, but also willfully enabled SoHoMD to continue to engage in its unlawful practices.

19. Defendant Jacques Jospitre is an individual and the co-founder of Defendant SoHoMD.  At all times relevant, Dr. Jospitre exercised operational control over Plaintiff's employment and the payment of wages.  Dr. Jospitre resides at 66 West 88th Street (Apt. 6B), New York, NY 10024.

20. Defendant Edward Ratush is an individual and the co-founder of Defendant SoHoMD.  At all times relevant, Dr. Ratush exercised operational control over Plaintiff's employment and the payment of wages.  Dr. Ratush resides at 249 Eighth Street, Jersey City, NJ 07302.

## FACTUAL ALLEGATIONS

17. Plaintiff began working for SoHoMD in 2018 and held the position of Behavioral Health Director until her employment ended on July 1, 2025.

18. Around mid-2024, SoHoMD experienced ongoing financial difficulties and stopped paying employees, including Plaintiff, the full wages to which they were entitled.

19. On or about September 16, 2024, Defendant Jospitre sent out the following email: "HR Updates: In terms of payroll, more funds were processed today to go out tomorrow. We will get the remaining portion of payroll completed by Wednesday or Thursday depending on the timing of our claims. Consultants will be paid after that."

20. By approximately December 2024, Defendants began paying wages in partial installments—e.g., 27.9% paid on one day, followed by 30% the next day.

21. On or about January 10, 2025, Defendant Jospitre sent another company-wide email entitled "HR Updates," in which he states, in relevant part:

    "Yes, the timeline has been extended from what I said a few weeks ago. As we've been cleaning things up we identified more issues that we're addressing. We've made changes to the billing and finance team to improve our performance and prediction accuracy. What I can say is we are close to finishing the posting and being able to access more capital to get payroll and other cash flow issues addressed."

22. On or about January 17, 2025, Defendant Jospitre sent an additional company-wide email, again entitled "HR Updates," stating, in relevant part:

"1. It pains me to hear of the challenges people are going through. Once we are in the clear, I will want to explore what we can do to help each person on a case by case basis.

2. In terms of compensation, I will start an employee stock option plan to help each person benefit as an owner in SoHoMD.

3. We have substantial money that will be coming in from our past billing issues. We are getting paid for work done in 2023 and 2024. It will supplement the work that we are doing today."

23. On or about May 20, 2025, Plaintiff and other employees received an email from SoHoMD's HR Director, Asia Lefebre. Ms. Lefebre's email stated:

1. "This email is to confirm that a small deposit –equal to 9.95% of your total gross wages for the April 23-May 6, 2025 pay period—has been process via Chase wire transfer."

2. "As with the previous two pay cycles, this interim payment is being issued outside of our regular payroll system. . . . At this time, HR does not yet have a confirmed date for when the remainder of this pay cycle will be completed."

24. Between May 23, 2025 and July 18, 2025, Ms. Lefebre sent Plaintiff and other employees seven (7) additional emails regarding the wage payments for the April 23-May 6, 2025 pay period. The emails confirmed that small, incremental payments had been distributed to employees, but full payment was never remitted.

25. On or about June 20, 2025, Ms. Lefebre sent an email to employees which stated ". . . you've received approximately 70% of you total gross wages for this pay cycle, after accounting for tax deductions."

26. Then, via two nearly identical emails dated Friday, June 20, 2025 and Friday, July 18, 2025, Ms. Lefebre stated: "I wanted to confirm that, unfortunately, no payments were able to be processed today."

27. Several times in 2025, Defendant Jospitre made verbal promises to Plaintiff that she would be awarded a retirement package in recognition of her role and tenure. Although he did not provide specifics regarding the retirement package, Defendant Jospitre stated that the retirement package would make Plaintiff "richer than her wildest dreams" and that Plaintiff would be "more than comfortable. Money won't be a worry."

28. However, as of April 2025, Plaintiff received no compensation for work performed thereafter.

29. Throughout this time, Plaintiff was repeatedly told by Defendant Jospitre that things would turn around and that investments or loans were forthcoming.

30. More than 100 employees resigned during this period, citing nonpayment or irregular payment of wages.

31. Plaintiff told Defendant Jospitre that she was resigning in late May or early June 2025. When giving her four-week notice, Plaintiff informed Defendant Jospitre that she could no longer "hang in with [him] anymore" and could not work for no compensation.

32. Defendant Jospitre promised Plaintiff that SoHoMD was "so close" and asked her to "give him a few more weeks." Defendant Jospitre also begged Plaintiff to not tell anyone else that she was leaving.

33. At the end of June 2025, before Plaintiff's last day, Plaintiff told Defendant Jospitre that "after I'm gone, I hope you don't forget all the promises you made to me." Defendant Jospitre responded: "you and Mary [Plaintiff's wife] are not going to have to worry."

34. At the end of July 2025, Plaintiff contacted Defendant Jospitre to inquire when she would be paid. She informed him that she needed payment, or she and her wife were going to have to put their house up for sale.

35. Plaintiff's final day of employment was July 1, 2025, at which point she had not received full payment of wages owed or any of the promised retirement benefits.

36. Dr. Edward Ratush was acutely aware of Dr. Jospitre's actions as an equal member and owner of Defendant SoHoMD. Dr. Ratush filed his own complaint, on his own behalf and derivatively on behalf of SoHoMD against Dr. Jospitre to making unauthorized withdrawals from SoHoMD's accounts.[1]

37. At the time of this Complaint, Defendants failed to provide employment remuneration for the approximate amount of $40,000.

**COUNT I – VIOLATION OF THE CONNECTICUT WAGE STATUTE**
**(CONN. GEN. STAT. §§ 31-71b, 31-71c, 31-72)**
**(As against Defendants SoHoMD PLLC, Defendants Engage PEO/S2 HR Entities, Jacques Jospitre, and Edward Ratush)**

---

[1] *See Edward Ratush, M.D. individually and derivatively on behalf of Soho Medical Doctors, PLLC v. Jacques Jospitre, Jr., M.D.* (N.Y. Sup. Ct. N.Y. Cnty. July 19, 2024) (complaint).

38. Plaintiff realleges and incorporates by reference paragraphs 1 through 37 as if fully set forth herein.

39. Defendants failed to pay Plaintiff all wages earned, on time and in full, in violation of Conn. Gen. Stat. §§ 31-71b and 31-71c.

40. Defendants' conduct was willful and without good faith justification.

41. Plaintiff is entitled to recover all unpaid wages, liquidated damages equal to twice the amount of unpaid wages, costs, and reasonable attorneys' fees pursuant to Conn. Gen. Stat. § 31-72.

## COUNT II – BREACH OF CONTRACT
### (As against Defendants SoHoMD PLLC, Defendants Engage PEO/S2 HR Entities, Jacques Jospitre, and Edward Ratush)

42. Plaintiff realleges and incorporates by reference paragraphs 1 through 37 as if fully set forth herein.

43. Defendants had an agreement with Plaintiff, express or implied, to pay her for all work performed and to provide a retirement package.

44. Defendants breached this agreement by failing to pay wages due and failing to provide the promised retirement compensation.

45. Plaintiff has suffered damages as a result of Defendants' breach.

## COUNT III – UNJUST ENRICHMENT
### (As against Defendants SoHoMD PLLC, Jacques Jospitre, and Edward Ratush)

46. Plaintiff realleges and incorporates by reference paragraphs 1 through 37 as if fully set forth herein.

47. Plaintiff conferred a benefit upon Defendants by providing services without receiving agreed-upon compensation.

48. Defendants accepted and retained this benefit under circumstances that make it inequitable to do so without payment.

49. Plaintiff is entitled to restitution in an amount to be proven at trial.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this court enter a judgment:

a. Award all unpaid wages due under Conn. Gen. Stat. §§ 31-71b and 31-71c;

b. Award liquidated damages pursuant to Conn. Gen. Stat. § 31-72;

c. Award damages for breach of contract;

d. Award restitution for unjust enrichment;

e. Award pre- and post-judgment interest;

f. Award reasonable attorneys' fees and costs of this action; and

g. Grant such other and further relief as the Court deems just and proper.


**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


PLAINTIFF, ROBIN KEMPNER

By:        */s/ William G. Madsen*
William G. Madsen (ct09853)
Jennifer C. Messina (ct31759)
Madsen, Prestley & Parenteau, LLC
402 Asylum Street
Hartford, CT 06103
Tel: (860) 246-2466
Fax: (860) 246-1794
wmadsen@mppjustice.com
jmessina@mppjustice.com