UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBIN KEMPNER, | : | Civil Action No. |
| Plaintiff, | : | No. 3:25-cv-01883 (OAW) |
| V. | : | |
| SOHO MEDICAL DOCTORS, PLLC d/b/a SOHOMD, SOHO MANAGING COMPANY d/b/a SOHOMD, S2 HR SOLUTIONS 1A, LLC d/b/a ENGAGE PEO, and S2 HR SOLUTIONS 2D, LLC, ENGAGE PEO, INC., JACQUES JOSPITRE, M.D., AND EDWARD RATUSH, M.D., | : | |
| Defendants. | : | August 5, 2026 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO SET ASIDE THE ENTRY OF DEFAULT**

Pursuant to Fed. R. Civ. P. 55(c), Defendants Soho Medical Doctors, PLLC, Soho Managing Company, Jacques Jospitre, M.D., and Edward Ratush, M.D. (the "SohoMD Defendants") move the Court to set aside the default entered on May 8, 2026 (ECF No. 32). As set forth in this Memorandum, setting aside the entry of default is appropriate because the default was not willful, the SohoMD Defendants have a meritorious defense, and there would be no prejudice to the Plaintiff in opening the default.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action concerns a failure to pay wages. Plaintiff commenced this action with a Complaint filed on November 10, 2025 (ECF No. 1). The Complaint asserts claims for violation of Connecticut's wage statute, Conn. Gen. Stat. § 31-72 (Count I); breach of contract (Count II); and unjust enrichment (Count III).

The Complaint alleges that Plaintiff was employed by one or both of Defendants Soho Medical Doctors, PLLC and Soho Management Company (jointly referred to herein as "SohoMD") from 2018 through July 1, 2025. Complaint at ¶¶ 5-8, 17. In mid-2024, SohoMD began to experience financial difficulties as a result of which it ceased paying full wages to its employees, including Plaintiff. Id. at ¶¶ 18, 20. Between September 16, 2024 and July 18, 2025, Defendant Jacques Jospitre, M.D. ("Dr. Jospitre") and SohoMD's human resources director made a series of statements to employees concerning the company's difficulties meeting its payroll obligations, which failed to include all wages due to SohoMD personnel. Id. at ¶¶ 19, 21-26. By July 18, 2025, SohoMD no longer could process wage payments to its employees. Id. at ¶ 26. Plaintiff and Dr. Jospitre engaged in numerous verbal communications in 2025 during which Dr. Jospitre represented that she would receive a "retirement package"; that business would "turn around" with new investments and loans; and that Plaintiff should not resign her employment. Id. at ¶¶ 27, 29, 31-34.

Plaintiff filed her Complaint in this case on November 10, 2025. (ECF No. 1). On May 7, 2026, Plaintiff filed a motion for entry of default against the SohoMD Defendants (ECF No. 31). The Court entered a default against the SohoMD Defendants on May 8, 2026 (ECF No. 32). On June 8, 2026, Plaintiff filed a Motion for Default Judgment (ECF No. 35). To date, the Court has not ruled on that motion.

As Plaintiff acknowledges in her Complaint, the SohoMD Defendants kept her and her fellow employees apprised of the company's financial straits and its effect on wage payments. Dr. Jospitre confirms that fact. Declaration of Jacques Jospitre, M.D. dated August 3, 2026 ("Jospitre Decl."), attached hereto as Exhibit 1, at ¶¶ 9-13. Plaintiff

does not allege that any of the SohoMD Defendants attempted to mislead or deceive her or in any way acted with a dishonest purpose. SohoMD was unable to meet its payroll obligations in full because it encountered significant financial difficulties as a result of a hacking incident that disrupted its revenue stream, later leading to onerous loan commitments. Id. at ¶¶ 6, 7. Dr. Jospitre, as SohoMD's CEO, believed that the company's forced deferment of wage payments did not violate the law. Id. at ¶ 14.

The SohoMD Defendants have not appeared previously because they lacked the financial resources to do so. Id. at ¶ 15. The SohoMD Defendants intend to assert defenses to a number of Plaintiff's claims. Id. at ¶ 16.

## II. STANDARD FOR SETTING ASIDE AN ENTRY OF DEFAULT

The Court's entry of default against the SohoMD Defendants may be set aside pursuant to Fed. R. Civ. P. 55. Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default." Rule 55(b) then requires a party who received the default in its favor to move for a default judgment. In this case, the Court entered a default pursuant to Rule 55(a), but no default judgment pursuant to Rule. 55(b) has entered.

Fed R. Civ. P. 55(c) allows the court to "set aside an entry of default for good cause." The Court must consider three factors on a Rule 55(c) motion: "(1) whether the default was willful; (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the non-defaulting party prejudice." S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998).

A motion under Rule 55(c) to set aside an entry of default is addressed to the sound discretion of the district judge." State Farm Mut. Auto. Ins. Co. v. Cohan, 409 F. App'x 453, 455 (2d Cir. 2011) (quoting Marziliano v. Heckler, 728 F.2d 151, 156 (2d Cir. 1984)). In ruling on a motion to set aside a default, the Court may consider such equitable factors as "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993). "Good cause" and the three-factor criteria for setting aside a default "should be construed generously," as a "reflection of [the Second Circuit's] oft-stated preference for resolving disputes on the merits." Id. at 95-96. "No one factor is determinative, but each is to be weighed and balanced with the others." Speaks v. Donato, 214 F.R.D. 69, 73 (D. Conn. 2003). The district court "assess[es] the individual circumstances of a given case and ... evaluate[s] the credibility and good faith of the parties." Enron Oil Corp., 10 F.3d at 95. "[W]hen doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." Id.

The Second Circuit repeatedly has stated its preference that litigation should be resolved on the merits rather than by default. Id.; see also Traguth v. Zuck, 710 F.2d 90, 94 (2d Cir. 1983) (noting that "[t]he narrow scope of the district court's discretion [in ruling on a motion to set aside a default] stems from 'strong policies favoring the resolution of genuine disputes on their merits.'" (quoting Jackson v. Beech, 636 F.2d 831, 835 (D.C.Cir.1980)); Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981) ("Defaults are not favored, particularly when the case presents issues of fact, and doubts are to be resolved in favor of a trial on the merits.") (per curiam).

Moreover, "[w]hile courts are entitled to enforce compliance with the time limits of the Rules by various means," default is considered an "extreme sanction" to be treated as "a weapon of last, rather than first, resort." Meehan, 652 F.2d at 277 (citations omitted); see also Enron Oil Corp., 10 F.3d at 96 ("[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party").

## III. ARGUMENT

The SohoMD Defendants submit that good cause exists to set aside the default entered against them. As discussed below, the SohoMD Defendants' default was not willful; the SohoMD Defendants possess, and intend to raise, meritorious defenses; and setting aside the default will not prejudice the Plaintiff.

### A. Lack of Willfulness of the Default

For purposes of Rule 55(c), "the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998). '[W]illfulness,' in the context of a default, ... refer[s] to conduct that is more than merely negligent or careless." Id.; see Halo v. City of New York, 2005 WL 289535, at *1 (S.D.N.Y. Feb. 4, 2005) ("[W]illfulness requires a showing of bad faith or deliberate default on the part of the defaulting party …").

The SohoMD Defendants have not acted in bad faith or in an egregious or disrespectful manner; they simply lacked the financial resources to appear in this case and interpose defenses to Plaintiff's claims.

## B. Existence of a Meritorious Defense

The second factor the Court must consider in deciding a motion to set aside the entry of default is whether the defaulted parties possess a meritorious defense. This requires moving parties to "go further than alleging that a defense exists. Instead, [they] must allege specific facts that, if proved at trial, would constitute a defense to the claim asserted." Todtman, Nachamie Spizz & Johns, P.C. v. Ashraf, 2006 WL 2850210 at *1 (S.D.N.Y. Oct. 4, 2006) (quoting 10 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE, § 55.50[1][b][ii] (3d ed.2005)), aff'd, 316 F. App'x 51 (2d Cir. 2009); see Enron Oil Corp., 10 F.3d at 98.

### (1) Wage Claim

The SohoMD Defendants have a meritorious defense to the statutory wage claim in Count I of the Complaint.

#### (a) The Complaint Alleges No Facts Supporting the Imposition of Personal Liability against the Individual Defendants, and Plaintiff has Offered No Evidence to Support Such a Claim

Count I of Plaintiff's Complaint seeks recovery against Dr. Jospitre and Dr. Edward Ratush (jointly, the "Individual Defendants") under Conn. Gen. Stat. § 31-72 for failure to pay wages. Section 31-72 provides, in relevant part, that in an action to collect wages, a prevailing employee may recover either "(1) twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court."

In Butler v. Hartford Technical Institute, Inc., 243 Conn. 454 (1997), the Connecticut Supreme Court held that a corporate officer could be found personally liable for the nonpayment of wages as an "employer" within the meaning of Section § 31-72. Such liability, however, is limited to circumstances in which a plaintiff pleads and proves that the officer "is the ultimate responsible authority to set the hours of employment and to pay wages and is the specific cause of the wage violation." Id. at 463–64. Plaintiff's Complaint does not allege that either of the Individual Defendants (Dr. Jospitre and Dr. Ratush) possessed the ultimate responsible authority to set hours of employment or to pay wages, or that either was the specific cause of any wage violation. Nor in good faith could Plaintiff make those allegations. Absent such pleading and proof, the Individual Defendants cannot be held labile for the claim asserted in Count I. Evans v. Tiger Claw, Inc., 141 Conn. App. 110, 121-24 (2013).

**(b) The Complaint Does Not Allege Facts Supporting a Claim of Bad Faith Conduct by Any of the Defendants**

In Lockhart v. NAI Elite, LLC, 2020 WL 5261242 (Conn. Super. Aug. 5, 2020), the court adopted the following standard for determining whether an employer acted in "good faith" for purposes of awarding double wages under Conn. Gen. Stat. § 31-72:

> Section 31-72 does not define the term "good faith" and so the court ought to use the common meaning of the term. See Doe v. Manson, 183 Conn. 183, 186, 43 A.2d 859 (1981). Absent a statutory definition, the Appellate Court has adopted the following definition: "In common usage, the term good faith has a well defined and generally understood meaning, being ordinarily used to describe that **state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation** ... It has been well defined as meaning **[a]n honest intention to abstain from taking an unconscientious advantage of another**, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious ... **It is a subjective standard of honesty of fact in the conduct or transaction**

> **concerned, taking into account the person's state of mind, actual knowledge and motives** ... Whether good faith exists is a question of fact to be determined from all the circumstances." (Citations omitted.) Bhatia v. Debek, 287 Conn. 397, 412-13, 948 A.2d 1009 (2008).

Id. at * 5 (emphasis added); see also De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 269 Conn. 424, 433 (2004) ("Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive ... Bad faith means more than mere negligence; it involves a dishonest purpose.").

The allegations of the Complaint and Dr. Jospitre's Declaration demonstrate that the SohoMD Defendants did not act with either actual or constructive fraud or a design to mislead or deceive the Plaintiff; did not intentionally neglect or refuse to fulfill a duty or contractual obligation; did not take an unconscientious advantage of Plaintiff; and did not otherwise act with any unscrupulous or sinister motive. The Plaintiff was well aware of the fact that SohoMD simply lacked the financial resources to pay wages when due. See Complaint at ¶¶ 18-26; Jospitre Decl. at ¶¶ 9-13.

There is no allegation or suggestion of fraud, unscrupulous conduct, or intentional wrongdoing in this case. Rightly or wrongly, the SohoMD Defendants believed that SohoMD's financial circumstances prevented full payment of wages and that SohoMD would do its best to pay all wages owed when it had the financial resources to do so.

**(c) Plaintiff Waived her Claim to Unpaid Wages**

As alleged in her Complaint, Plaintiff agreed to continue working for SohoMD with full knowledge that the company was unable to pay her full wages. "Waiver is the

intentional relinquishment or abandonment of a known right or privilege." MSO, LLC v. DeSimone, 313 Conn. 54, 64 (2014). "Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied.... In other words, waiver may be inferred from the circumstances if it is reasonable to do so." Lime Rock Park, LLC v. Planning & Zoning Commission, 335 Conn. 606, 623–24 (2020). Subject to evidence to be disclosed in the course of discovery, the SohoMD Defendants may maintain that Plaintiff waived her claim to the wages sought in this case pursuant to Section 31-72.

**(2) Breach of Contract Claim**

The SohoMD Defendants have a meritorious defense to the breach of contract claim in Count II of the Complaint.

"The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., 311 Conn. 282, 291 (2014).

As noted above, and as alleged in her Complaint, Plaintiff agreed to continue working for SohoMD with full knowledge that the company was unable to pay her full wages. "Waiver is the intentional relinquishment or abandonment of a known right or privilege." MSO, LLC v. DeSimone, 313 Conn. 54, 64 (2014). "Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied.... In other words, waiver may be inferred from the circumstances if it is reasonable to do so." Lime Rock Park, LLC v. Planning & Zoning Commission, 335 Conn. 606, 623–24 (2020). Subject to evidence to be disclosed in the course of discovery, the SohoMD

Defendants may maintain that Plaintiff waived her claim to the wages sought in this case.

In addition, Plaintiff's Complaint does not allege the existence of a contract between her and any of the SohoMD Defendants. Even if the Court could infer the existence of an implied contract between Plaintiff and SohoMD, the Complaint includes no factual allegations supporting the existence of a contractual relationship between Plaintiff and either of the Individual Defendants.

**(3) Unjust Enrichment Claim**

The SohoMD Defendants have a meritorious defense to the unjust enrichment claim in Count III of the Complaint.

"The ... three basic requirements [for unjust enrichment] are that (1) the defendant was benefited, (2) the defendant unjustly failed to pay the plaintiff for the benefits, and (3) the failure of payment was to the plaintiff's detriment." Gagne v. Vaccaro, 255 Conn. 390, 409 (2001).

Any benefit conferred on SohoMD cannot be considered "unjust" given Plaintiff's agreement to continue working for SohoMD with full knowledge that the company was unable to pay her full wages. "Waiver is the intentional relinquishment or abandonment of a known right or privilege." MSO, LLC v. DeSimone, 313 Conn. 54, 64 (2014). "Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied.... In other words, waiver may be inferred from the circumstances if it is reasonable to do so." Lime Rock Park, LLC v. Planning & Zoning Commission, 335 Conn. 606, 623–24 (2020). Subject to evidence to be disclosed in the course of

discovery, Plaintiff thus may be found to have waived her claim to the wages sought in this case.

The Individual Defendants cannot be held liable under the doctrine of unjust enrichment because, to prevail on an unjust enrichment claim, a plaintiff must prove that he or she conferred a benefit directly upon a defendant. Although it seeks recovery against them, the unjust enrichment claim in Count III includes no factual allegations supporting the contention that Plaintiff conferred any direct benefit on either of the Individual Defendants (Dr. Jospitre and Dr. Ratush), or that either of them in any sense was "enriched" – whether or not unjustly – by any services Plaintiff provided to SohoMD. Absent such evidence, the Individual Defendants have a complete defense to this claim. See, e.g., Chateaux Software Dev., Inc. v. Digital Commodity Holdings Ltd., 2021 WL 1691885 at * 2 (Conn. Super. March 31, 2021) (striking unjust enrichment claim asserted against individual business owners for computer technology services provided to corporate entity); Cellmark Paper, Inc. v. D'Agrosa, 2014 WL 6996924 at ** 3-4 (Conn. Super. Oct. 30, 2014) (striking unjust enrichment claim against corporation's CEO for paper sales made to company).

**C. Lack of Prejudice to Plaintiff**

For purposes of Rule 55(c), "delay standing alone does not establish prejudice." Enron Oil Corp., 10 F.3d at 98. Rather, to establish prejudice, a plaintiff must demonstrate that the delay will have consequences, such as "the loss of evidence", "increased difficulties for discovery", or "greater opportunity for fraud and collusion." Yan v. Bocar, 2005 WL 3005338 at *15 (S.D.N.Y. Sept. 30, 2005).

Moreover, to meet this standard, "the plaintiff must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated." Murray Eng'g, P.C. v. Windermere Props. LLC, 2013 WL 1809637 at *5 (S.D.N.Y. Apr. 30, 2013). None of these consequences will come to pass due to the SohoMD Defendants' delay in appearing in this case.

## III. CONCLUSION

The Second Circuit has held that "[s]trong public policy favors resolving disputes on the merits" and that, "[a]lthough courts have an interest in expediting litigation, abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct." Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 172 (2d Cir. 2001) (quoting Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996)); see also id. at 174 ("It is well established that default judgments are disfavored. A clear preference exists for cases to be adjudicated on the merits."); Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993) ("[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party.").

This is not a case involving abusive or egregious conduct on the part of the SohoMD Defendants. These Defendants cannot reasonably be found to have acted in bad faith under these circumstances and, as noted above, setting aside the default will not unfairly prejudice Plaintiff. The SohoMD Defendants have asserted what they believe to be meritorious defenses to Plaintiff's claims for relief.

Pursuant to Rule 55(c), and for the reasons set forth above, Defendants Soho Medical Doctors, PLLC, Soho Managing Company, Jacques Jospitre, M.D., and Edward Ratush, M.D. respectfully move the Court to set aside the default entered against them.

DEFENDANTS
SOHO MEDICAL DOCTORS, PLLC,
SOHO MANAGING COMPANY,
JACQUES JOSPITRE, M.D., AND
EDWARD RATUSH, M.D.

By: /s/ *Douglas J. Varga*
Douglas J. Varga, Esq. (ct18885)

Lucas & Varga LLC
2425 Post Road, Suite 200
Southport, CT 06890
Phone: (203) 227-8400
Fax: (203) 227-8402
dvarga@lucasvargalaw.com

Their Attorneys

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBIN KEMPNER,<br><br>Plaintiff,<br><br>V.<br><br>SOHO MEDICAL DOCTORS, PLLC d/b/a SOHOMD, SOHO MANAGING COMPANY d/b/a SOHOMD, S2 HR SOLUTIONS 1A, LLC d/b/a ENGAGE PEO, and S2 HR SOLUTIONS 2D, LLC, ENGAGE PEO, INC., JACQUES JOSPITRE, M.D., AND EDWARD RATUSH, M.D.,<br><br>Defendants. | Civil Action No.<br><br>No. 3:25-cv-01883 (OAW) |

**DECLARATION OF JACQUES JOSPITRE, M.D.**

1. I am over the age of 18 years and understand the obligations of an oath.

2. I have personal knowledge of the facts set forth in this Declaration.

3. I make this Declaration in support of the Motion to Set Aside Entry of Default filed by the following Defendants: Soho Medical Doctors, PLLC; Soho Managing Company; Jacques Jospitre, M.D.; and Edward Ratush, M.D. (the "SohoMD Defendants").

4. I am the co-founder and CEO of Defendant Soho Medical Doctors, PLLC ("SohoMD").

5. Dr. Edward Ratush and I established SohoMD as a psychiatric practice in New York in 2011. Over time we developed our practice into a telepsychiatry and mental wellness platform serving patients across the country.

6. In 2024, SohoMD's claim-processing provider (Change Healthcare) was hacked and SohoMD was not able to submit claims for months.[1] The company was forced to take loans to meet its financial obligations. SohoMD began to experience serious financial difficulties not only due to a disruption in claim payments, but also as a result of unanticipated and exorbitant loan obligations.

7. SohoMD's financial difficulties ultimately interfered with its ability to cover biweekly wage payments.

8. In 2024 and 2025, SohoMD employed more than 120 persons.

9. I was at all times transparent with SohoMD's employees that we were having difficulty meeting payroll. I told them that we were working on financing opportunities and expected SohoMD to make up any wage underpayments once the company's financial circumstances improved.

10. At my direction, SohoMD's human resources director also kept employees advised of the company's financial circumstances and its inability to make full payroll payments on a consistent basis.

11. The plaintiff, Robin Kempner, was a long-time employee and colleague. I also considered Ms. Kempner a personal friend.

12. In 2024 and 2025, I had numerous conversations with Ms. Kempner regarding the company's adverse financial circumstances and our intent to make good

[1] "Change Healthcare is one of the largest health payment processing companies in the world. It acts as a clearing house for 15 billion medical claims each year — accounting for nearly 40 percent of all claims. The cyberattack that occurred in February [2024] knocked Change Healthcare — a subsidiary of the behemoth global health company UnitedHealth — offline, which created a backlog of unpaid claims. This has left doctors' offices and hospitals with serious cashflow problems — threatening patients' access to care." Rep. Brett Guthrie (R. Ky.), Chair of the House Energy and Commerce Committee, *What We Learned: Change Healthcare Cyber Attack* (May 03, 2024), https://energycommerce.house.gov/posts/what-we-learned-change-healthcare-cyber-attack

on any wage underpayments made to her and to other employees. Ms. Kempner told me that she fully understood the financial bind the company was in and agreed to defer payment of wages until we were able to obtain additional funding for the business.

13. Based on my discussions with Ms. Kempner, I believed that she understood and accepted that the payment of her wages would be delayed.

14. I did not consult with legal counsel regarding my understanding with Ms. Kempner, but I reasonably believed that our agreement to defer payment of wages until SohoMD's financial capabilities improved was legal.

15. SohoMD was unable to raise funds to retain counsel to represent SohoMD and the other SohoMD Defendants until July 31, 2026.

16. I believe the SohoMD Defendants have bona fide defenses to most of the claims asserted in the Plaintiff's Complaint and we intend to raise those defenses if the Court grants the Motion to Set Aside the Entry of Default.

PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON AUGUST 3, 2026.

Jacques Jospitre, M.D.

**CERTIFICATION**

I hereby certify that on August 5, 2026, a copy of the foregoing Memorandum of Law in Support of Motion to Set Aside the Entry of Default was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Douglas J. Varga*
Douglas J. Varga (ct18885)